Brinkerhorr, J.
It being admitted that the Citizens’ Bank-of Steubenville has done, and continues to do, all the acts necessary to perfect and maintain its organization under the act of March 21, 1851, and has also complied with the provisions thereof to entitle it to notes of circulation, which the auditor of state refuses to give, is a proceeding upon madamus the proper remedy to procure its circulation ? We think it is.
Section 5G9 of the code: “ The writ of mandamus.may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty> resulting from an office, trust, or station. But though it may compel an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it can not control judicial discretion.
“Sec. 570. This writ may not be issued in any case*where there is a plain and adequate remedy in the ordinary course of the law. It may issue on the information of the parties beneficially interested.”
Sections 6 and 7 of the act of March 21,1851, prescribe the duties of the auditor of state in regard to issuing circulation to banking companies organized under it.
“ Seo. 6. The auditor is hereby authorized and required to cause to be engraved and printed, in the best manner to guard against counterfeiting, such quantity of circulating notes, in the, similitude of bank-notes, in blank, of the different denominations herein authorized as he may, from time to time, deem necessary to carry into effect the provisions of this act, and of such form as ho may prescribe. .Such blank circulating notes shall be countersigned, numbered, and registered in proper books, to be provided and kept for that purpose in the office of said auditor, under his direction, by such person or persons as said auditor shall appoint for that purpose, so that each denomination of such circulating notes shall be-of the same similitude, and bear the uniform signature of such register, or one of such registers.
“ Sec. 7. Whenever any company, formed for the purpose of bank *324 ing under the provisions of this act, shall lawfully transfer to the auditor of state any portion of the public stock issued or to be issued by the State of Ohio, or by the United States, such company shall be entitled to receive from the auditor an equal amount of such circulating notes of the different denominations, registered and countersigned as aforesaid; but said public stock shall in all cases be, or be made to be, equal to stock of this state, producing at least five per centum interest per annum; and it shall not be lawful for the-auditor to take such stock at a rate above its par value, nor above its current market value; provided, that the auditor shall not furnish to said ^company circulating notes to an amount more [324 than three times the amount of the capital stock of such company, actually paid in and remaining in said bank undiminished by losses.” Swan’s Stat. 117.
It is complained that the auditor of state, in violation of his official duties as prescribed in these sections of this law, refuses to-accept the state stocks tendered him, and issue to said bank its notes of circulation equivalent in amount thereto. The sixth section not only authorizes, but requires the auditor “ to cause to be engraved and printed such quantity of such circulating notes, which shall be countersigned, registered and numbered, as may be necessary to carry out the provisions of the act."
The seventh section provides : “ Whenever any company, formed for the purpose of banking under the provisions of this act, shall lawfully transfer to the auditor of state any portion of the public stocks,” etc., “such company shall be entitled to receive from the auditor an equal amount of such circulating notes.”
This company having organized and tendered .to the auditor, lawfully transferred to him, twenty thousand dollars of public stocks of the State of Ohio, the whole tenor of the act, as well as the seventh section above given, requires as much that the auditor shall receive said stock as that “ said company shall be entitled to receive from the auditor an equivalent amount of circulating notes.” This section is susceptible of but one construction, which is, that the auditor shall, when lawfully transferred to him, accept said stock, and give said company an equal amount of circulating notes.
These sections unquestionably “ specially enjoin as a duty ” upon the auditor of state, “ resulting from that office,” that he cause said notes to 'be printed, countersigned, numbered, and registered, and *325, 326 325] receive said stocks '-^lawfully transferred to him, and give said, company its notes for circulation.
With these observations, and it being too apparent to require argument that there is “ no other specific, adequate remedy at law ” for the wrong complained of in this proceeding, we can not be mistaken in the remedy selected. This we might with safety have assumed since the. code and the case of the C., W. & Z. R. R. Co. v. The Commissioners of Clinton County, 1 Ohio St. 105.
Assuming, therefore, that the right of this banking company is clear, to have performed, by the auditor of state, the acts he refuses to perform, there being no apparent valid excuse for their nonperformance ; by section 532 of the code a peremptoty mandamus is the proper writ. The only excuse given for non-performance by the auditor is contained in his letter of April 25, 1856.
The act of March 21,1851, was passed by the last legislature assembled under the constitution of 1802, and it is not denied that the act was legally passed under that constitution. But it is said by the auditor that it is of doubtful constitutionality under the constitution of 1851, which took effect on the 1st of September of that year ; that his predecessor had treated it as abrogated by that instrument, and therefore he declines to receive the stocks and issue notes of circulation under said law.
The first section of the schedule annexed to the constitution of 1851, and for all purposes embraced within its provisions, a part of that instrument provides that “ all laws of this state in force on the 1st clay of September, one thousand eight hundred and fifty-one, not inconsistent with this constitution, shall continue in force until amended or repealed.” Now it is admitted on all hands that the act to regulate free banking was in full force before and up to 326] *the time mentioned in this section of the schedule, and it ©nly remains to inquire whether it then ceased to be so by reason of its being “inconsistent with the constitution,” which then took effect; or, in other words, whether the act “to regulate free banking ” is, in its provisions, so incompatible with those of the new constitution as to be by implication repealed by it ?
In the consideration of -this question, we must bear in mind that repeals, by implication, are not favored; and this rule “ is applicable to the inquiry whether any particular enactment has ceased to be' in force on account of repugnancy to the new constitution; and that repugnancy which must cause the law to fall must be *327 necessary and obvious; for, if by any fair course of reasoning the-law ánd the constitution can be reconciled, the law must stand Cass v. Dillon, 2 Ohio St. 607. What then are the provisions of the new constitution with which the “ act to regulate free banking” is supposed to be inconsistent? We are aware of none but the following sections of the thirteenth article:
" Sec. 1. The general assembly shall pass no special act conferring corporate powers.
“ Sec. 2. Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed.
“ Sec. 3. Dues from corporations shall be secured by such individual- liability of the stockholders, and other means, as may be prescribed by law; but in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.”
“ Sec. 7. No act of the general assembly, authorizing associations with banking powers, shall take effect until it *shall be sub- [327 mitted to the people at -the general election next succeeding the passage thereof, and be approved by a majority of all the electors voting at such election.”
That the “ act to regulate free banking ” is not inconsistent with the second section above quoted, is very obvious; for they both look to the same end and contemplate the same policy, to be effected by t-ho same moans, to wit, the formation of corporations “ under general laws.” And that general laws are always subject to alteration and repeal, without any special provision on the subject, has, so far as wo are aware, never boon denied.
Let us now look at the seventh section :
“ No act of the general assembly authorizing associations with banking powers, shall take effect until it shall be submitted to the people at the general election next succeeding the passage thereof, and be approved by a majority of all the electors voting at such election.”
Is this section prospective or retrospective in its intent and application ? Does it refer to past or future legislation ? It prescribes a condition precedent to the taking effect of an “ act of the general assembly, authorizing associations with banking powers.” This is the sole office of the section; and from the nature of the case it can not apply to the “ act to regulate free banking,” because *328, 329 that act had taken effect and existed in full force months preceding the taking effect of the new constitution. And so far from its being necessary and obviously clear that this section should be construed to embrace within its provisions acts of past legislation, “ authorizing associations with banking powers,” the language of the section leads us necessarily and clearly to the opposite conclusion.
Let us return now to the second and third sections:
“ Sec. 2. Corporations may be formed under general *laws ; but all such laws may, from time to time, be altered or repealed.
“ Sec. 3. Lues from corporations shall be secured by such individual liability of the stockholders; and other means, as may be prescribed by law; but in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.”
The second section is a grant of powers to the general assembly; the power, first, to authorize the formation of corporations under general laws; and second, to alter or repeal those laws. What general assembly is referred to in this and in the- seventh section? Obviously to the general assembly which should be called into being by and under the new constitution. All preceding general assemblies existed under and in virtue of the preceding constitution. The now constitution could confer no authority on them, for the last of them would expire at the moment of the birth of the new constitution. Following immediately on this grant of powers, contained in the second section, to the general assembly which was to come into being in the future, and under and by virtue of the provisions of the new constitution, and in immediate juxtaposition with it, comes the third section limiting the powers granted in the preceding section, and mandatory on the general assembly as to the mode of their exercise. This, we think, is the solo office of this section, and, like the grant of powers which it was designed to limit and regulate, it is prospective only, in its intent and application.
And this conclusion is, in my mind, greatly strengthened by the fact, that in the next-succeeding- section of this same thirteenth article, where the framers of the new constitution unquestionably do-329] intend to include corporations ^created by past as well as those to be created by future legislation, they say so in express *330 terms: “Sec. 4. The property of corporations, now existing, or-hereafter created, shall forever be subject to taxation, the same as the property of individuals.” And here, it seems to me, the maxim, “ eccpressio unius est exclusio alterius,” applies fairly and with conclusive weight. If the framers of the new constitution intended the-first three sections of this article to apply to past as well as future-legislation, and to corporations then existing, as well as those which might,thereafter be created, especially where those sections might readily, and without doing violence to their language, admit of a contrary construction, why did they not say so ? And why do they take such special and particular care, expressly to declare this intention-in the next succeeding section, if they were willing to leave the same intention to be wrought out by doubtful inference from the three preceding sections? To these questions, I apprehend there can be but one answer. They declared such to be their intention, where such intention existed; and they forebore to declare it where it had no existence.
Section 3 of article 13 of the constitution, which prescribes the minimum degree of individual liability of corporators, is the only-part of the.constitution with which the act we are considering can with any degree of plausibility be claimed to be inconsistent.
Certainly, the existence of banks is not inconsistent with the constitution, for the constitution expressly authorizes their formation in the future, and under general laws.
This act is silent as to the taxation of banks to be formed under its provisions, and therefore leaves them subject to such taxation as-the legislature may see proper, under the constitution, to prescribe.
This act, being a general law, and certainly, in so far as rights *had not vested under it prior to the taking effect of the new [330-constitution, is open to alteration or repeal.
Now, suppose we are mistaken in the conclusions to which we have arrived in respect to the construction and application of section 3 of article 13, and that, instead of being applicable to future-legislation only, it is to be regarded as a fundamental rule, applicable to, governing, and overriding, past and present as well as future legislation; what then? Does it follow that the entire “act to regulate free banking” is therefore repealed? We think not. The only effect of this construction of the section referred to, would, be to repeal, by implication, so much of the act as is inconsistent with that section; that the degree of individual liability prescribed? *331 by the act would be displaced, and substituted by the minimum measure of individual liability fixed by the constitution; or, in other words, that the rule of individual liability prescribed by the act would be displaced, and the minimum rule fixed by the constitution would be carried over and incorporated into tlio act, and become operative, instead of the rule prescribed by the act. In short, such .a construction of the section referred to would not at all affect the •existence of the act under consideration, the right of the relators to their corporate organization, or to the relief which they seek.
If we are correct in these views, it follows that the act of March 21, 1851, “to regulate free banking,” is not inconsistent with any of the provisions of the existing constitution, is not repealed by it, .and that the auditor of state ought to accede to the demands of the plaintiff. The general principles governing the questions presented in this case were elaborately and ably discussed in the case of Cass v. Dillon, before referred to; and concurring, as we do, in the opiniou 331] of a majority of the court, as there announced, *we'are happily relieved from much of the labor which otherwise might perhaps .be deemed appropriate in a case of this importance.

Peremptory mandamus ordered.

Swan, Bowen, and Scott, J J., concurred.